All right, be seated please. The last case we'll hear this morning is United States v. Crawley, and if it were not a surprise, this is another compassionate release case. All right, Mr. Zemel, we'll hear from you. Thank you, Your Honors. Good morning. My name is Danny Zemel and I'm here on behalf of the appellant Rodney Crawley. There is one difference I wanted to note for Your Honors in this case, we are dealing with a legal issue in this case, which makes it a little bit different than the other two. Our main contention here is that the district court... Well, each case has its own circumstances, so we'll hear anything you wish to present. Thank you, Your Honor. The district court erred in failing to recognize the Virginia common law robbery no longer qualifies as a predicate crime of violence for purposes of the sentencing guidelines career offender enhancement. In the wake of court and the Supreme Court of Virginia's decisions in a series of cases all called U.S. v. White. This court had White 1 and White 2. Because of that change, his guidelines range would now be half, less than half actually, of what it was when he was sentenced. Let me just get to the gut of the thing. You make a good case. I think White... We asked the Virginia Supreme Court to certify when we were considering whether Virginia robbery was a crime of violence. Of course, as you know, it concluded that there are ways that you can commit the crime without violence. We have held that it's not a crime of violence. That certainly favors you. Do you agree that we should apply Section 1B1.13? The new amendment, yes, Your Honor. Under Davis, yeah. Yes, I understand that we may... If we apply that, it seems to me that your motion may be just a touch premature. You may be able to get it, but it seems to me you have to show that you served 10 years. You have to show an unusually long sentence, and you have to show it's grossly disparate. Those other two are something that the district court should be assessing, I would think. The 10 years is... He's now served nine years, as I compute it. Maybe you give me a different number, but I recognize that his sentence is affected by his good time credits, but his actual service in prison has been nine years, which means that to satisfy 1B1.13, he should have to wait a year and come back. What do you say to that? Yes, Your Honor. I agree that under a calendar interpretation, we are at nine years, and there was a supplemental briefing from us and the government on that. However, our position is that the key operative phrase here is he must have served 10 years of the term of imprisonment. The guidelines policy statement itself uses the phrase sentence has been sentenced to multiple times. However, in this instance, it says has served at least 10 years of a term of imprisonment. Going back to Barbara V. Thomas, our main argument here, a Supreme Court case that has been superseded by statute, but the logic still holds. The Supreme Court went through that the phrase term of imprisonment is one of those odd phrases in law that can mean multiple things. Actually, in the good time credit statute itself that contains other aspects involving federal sentencing, the Supreme Court went through and noted that term of imprisonment can mean either the term to which you were sentenced by the judge, which here would be 188 months, or the amount of time you actually serve in prison, which will include good time credits. One of the main statutes that looked at that as an example of how this can be used in multiple ways is that in 18 U.S.C. 3624, which is the statute that also includes... The good time credits would reduce his sentence that's imposed, right? He gets good time credits, and if he's sentenced to 20 years, and he's got good time credits of two years, his term is 18 years, right? Well, Your Honor, if he gains all good time credits and gets to the end, then his term, he will have served according to the BOP 20 years, actually, because he will have served... He will not have served 20 years. He will have served whatever time he served, but his sentence will be 18 years. He will get out in 18 years, and that's all he will have served. Well, I think under Your Honor... I mean, served means he's been in prison. Yes, served does, Your Honor... And the good time credits reduces the sentence, so you're conflating the two. In this case, his sentence may be lower, but the requirement of the guidelines says he has to actually serve 10 years before he can qualify on that basis. Well, again, Your Honor, the phrase here is term of imprisonment. I think we're kind of... The term is served. That's the verb. It's served of the term of imprisonment. It's clarified by that, so it doesn't just say served at least 10 years. Sure, but he has to serve 10 years of his term of imprisonment. Now, if his term of imprisonment is only 8 years, he can't qualify, right? Because he hasn't served 10 years. Again, Your Honor, is our position that the term of imprisonment in the common parlance, absolutely, but it's a legal term of art in this phrase, and that the Sentencing Commission is drafting this on the background of multiple Supreme Court cases and other courts of appeals cases? I'm not taking issue with the term of imprisonment. I'm taking issue with the fact that the word served. In other words, the requirement verb is that he have served, right? Yes, Your Honor, I think we're... Okay, that's my issue now. You can give me a case that say somebody has served 20 years in prison when he actually only served 18 years because he had good time credits. That would be an interesting case. Well, yes, Your Honor. In the cases that we list in our brief for district courts, often in looking at compassionate release, when they talk about how much time has been served so far, they include the good time credits the person has earned so far. And part of this goes back to the actual argument in Barbara v. Thomas, which is an argument about whether good time credits were basically given at the beginning of your sentence, and then you can lose them, or whether you earn them along the way, and thus you're basically... The amount of time you spend in prison is actually extra. So basically, the way the good time credit statute works, or the way we're interpreting it, is that for every year you spend in prison, that you have exemplary behavior, and it's not easy to gain these credits. Your prison essentially says you have served an extra 50 days, that we are counting more days because of the good times of your credit. The Bureau of Prisons does not have the authority to actually reduce your sentence. It has the authority to say how it's calculating you have served that sentence. And some of that can be looked at... Again, looking at... I know the sentence gets a little bit mixed around, and I think that some of this... Again, the reason we kept focusing on Barbara v. Thomas is because I do agree with you, Your Honor, that under a kind of common parlance, if I were reading this not in a legal aspect, I would agree with you more so. However, based on the phrase term of imprisonment, we think it's very important here, because there's no other reason to have that qualifier. The sentencing policy statement could just say, has served at least 10 years, period. And I would absolutely agree with Your Honor's interpretation. However, because that extra phrase is added, and because the Supreme Court, Congressional statutes, the Tenth Circuit had a whole series of cases about, in a different context, about whether or not... What term of imprisonment means. And it's acknowledged that it means different things in different contexts. And further, to the extent that it is ambiguous, I think the rule of lenity would apply here. To the extent that we're saying the term of imprisonment is ambiguous, which the Supreme Court has acknowledged it is, and which even in the same statutes and similar paragraphs, it can mean different things, that in that context, it should be interpreted in favor of the criminal defendant in this instance. And we also believe that that would go to the purpose, the very purpose of compassionate release. As Judge Gregory was pointing out, the point of this here is that the whole point of the statute, and especially the expansion of the First Step Act's policy, the prevention of it being gatekept by the Bureau of Prisons, now being open to everyone, was an idea to look at the individual circumstances of people after they were sentenced. And the idea that people who have gotten maximum amount of good time credits would be eligible for relief slightly earlier than those who have not gotten any relief, completely fits within the purpose of that statute. Counsel, two questions. One, when you said that there had been a determination that this language is ambiguous, I think you said that just a second ago. I said if the court determines this language is ambiguous. In other contexts, the phrase term of imprisonment has been, I apologize if I misspoke, Your Honor. No, I may have heard you, no problem. In other contexts, term of imprisonment has been found to be ambiguous. The language serving a term, the exact language here has not. No. Maybe that informs us, maybe it doesn't. But the cases you're talking about aren't talking about 3624, are they? No, and I looked again, as the government points out in the brief, I believe only one court has looked at this, a district court case from outside of the Fourth Circuit. The second question I have, the district court didn't address this issue at all, correct? No, Your Honor, it did not. So we're doing something on our own for the first time here, I mean we could do that, it's a legal issue, maybe we could, but we're not reviewing anything on this point at all. The only thing the district court ruled on is the life issue, correct? Yes, Your Honor. So the policy statement, I think some of that could just be because of the timing aspect of it, this statement came out after all the briefing had been done and before the district court issued its opinion, but yes. That wasn't a criticism of the district court, it's just, you know, we usually do things and look at what others do and not do them ourselves, and we don't always do that, so we can decide. I just wanted to make sure I understood the procedural background. Yes, Your Honor. As I read the district court's opinion, it did note that this policy statement had been introduced, but did not address it. That's how I read the court's point on that, that if this court disagrees with my interpretation or our interpretation of the term of imprisonment rule, we would still ask that this court rule on the crime of violence with the U.S. be white, because as Judge Niemeyer pointed out, even if the government is correct on the 10-year rule application, we're basically saying not that Mr. Crawley is ineligible for relief, but that he has to wait a little bit longer, and given that this is a pure legal issue of whether or not white... Is there a question about white? I thought we had that pretty well settled, didn't we? I thought as well, Your Honor, but the court said here that it couldn't... It said it was uncertain, but it didn't recognize the reality that he would no longer be a career offender now. So at the very least, the district court needs to be corrected on that point and made sure that going forward, what the district court pointed out was that technically white dealt with the Armed Career Criminal Act, whereas here we're dealing with the sentencing guidelines, and they have different enumerated offenses. The problem is that the definition to meet categorically the enumerated offense, you have the same force clause issue. So it does... This court's holding is binding, but the district court said specifically that it couldn't... I understand the question, yes. Yeah, and so that is our position on that. And then... Why wouldn't we, counsel, just... Why wouldn't we say white says this is not a crime of violence. We vacate... District court look at the situation and deal with this time served in the first instance, and we deal with it depending on what happens. Yes, this court definitely has... It may be that he's served the full ten years without any credit by then, and we'd be dealing with an issue that is not even necessarily right for us. Yeah, your honors definitely have the authority to do that, to kick this back to the district court and have them look at this in the first instance. Our position here is that this is a purely legal issue that this court can address, and also going to the timing aspect as a practical matter, that our position as well is that Mr. Crawley, currently, if he does show the extraordinary compelling sentences, he has now served, regardless of how you interpret that term, he has served more time than the maximum of the guidelines would be now. For someone that at the sentencing hearing itself, the district court in that case said this is a long sentence, I hope something happens, I hope this can release this for you, things like that. So to a certain extent, the longer that this process pushes out, he ends up serving a much longer sentence for that purpose. So in a certain sense, in the sense of getting a merit on that, we are asking for this court to rule on the legal issues that are in front of it, but there is certainly the authority for this court to correct the district court on the crime of violence issue, which is the main one we are pushing, and have the district court look at the ten year rule in the first instance. And so if this court has no other questions at this time, I will reserve the rest of my time for rebuttal. Thank you. Good morning and may it please the court. Daniel Honnold for the United States. This court should affirm because the district court did not abuse its discretion in denying defendant's request for compassionate release in this case. I think probably the simplest way to get there as we were discussing this morning, both parties agree that the 1B1.13 policy statement should have applied and does continue to apply at the time that the district court adjudicated this motion. The upshot of that is that the defendant needed to have served ten years at the time the district court decided the motion. It's quite clear based on the plain language of the policy statement that he did not. You would say . . . I'm having trouble understanding your lack of use of discretion argument. I can understand you saying there's an independent basis to affirm namely that he hadn't served ten years based on how this language is interpreted. The district court . . . if there's an alternative basis to affirm, that's not the same as saying there was no abuse of discretion in the white interpretation. Does that make sense? I understand your point, Your Honor. We do have arguments on white that directly go to the abuse of discretion. I agree with your framing that this is maybe possibly better considered as an alternative grounds for affirmance. It's one that this court should assess in the first instance for two basic reasons. The term has served at least ten years is a term of art that this court can construe and would be a legal issue that would be entitled to no deference in the district court so the court can just address it in the first instance in its discretion. It's dispositive of the case. All parties agree that at the time of the motion the defendant had served well short of ten years. The only way to get to ten years is by some sort of interpretation by which the defendant has served ten years would need to also incorporate good time credits. How many years has he served as of now? Approximately nine years, Your Honor. At the time of the adjudication of the motion it was a little bit over eight years. The way that the defendant tries to get there is through this Barbara V. Thomas case and an interpretation of 18 U.S.C. 3624, but that case deals with the vesting of good time credits which actually supports our position. I think it's beyond dispute that these good time credits are accrued at the end of each calendar year at the anniversary of an inmate's term of incarceration, but they do not vest until the end of someone's sentence, meaning that they can be removed and taken away at any time for disciplinary infractions, for other reasons, of course within the bounds of reason, but the very fact that they can be taken away means that they cannot under any plain language understanding of the term has served be something that somebody has served. Just to give sort of a more commonsensical example, if two inmates are meeting each other for the first time in jail, one turns to the other and says, how much time have you served? How much time have you been in? If a person has been in jail for two years, they would turn to the other person and say, I've been in for two years. They wouldn't say, I've been in for two years plus 108 days because I've got 108 days of First Step Act credits. That's not how people talk. That's not how anybody would understand this term. The fact that it's directed towards the past has served. It's a backwards looking analysis. It's not how much time will be shaved off the end of my sentence. It's how much time have I been in jail? That is, I think, the only natural way to understand it. On that understanding, given that we're operating on an agreed sense that we're going to be using the policy statement, that's going to expose this case. A district court would not have had the ability to grant compassionate release under P6. Your Honor, the court's view on White, taking a step back, we are viewing this in the context of a compassionate release motion. The court is considering whether a change in the legal landscape can constitute an extraordinary and compelling reason. What the district court does here is note, and I think fairly, some residual uncertainty about whether or not Virginia will operate. I understand that. That's why I asked you the question. What's your position on White? In other words, what was White? ACCA? White was an ACCA case, Your Honor, and so was Williams. This is a guidelines case? This is a guidelines case. Now the question is, would White govern in this circumstance? What's your position on that? White does not control. I don't think anybody really argues that White controls the issue for a couple of different reasons. As Your Honor pointed out, White was an ACCA case, and ACCA does not have enumerated robbery. The guidelines do, and so White never had the occasion to address whether or not Virginia . . . The guidelines enumerates robbery, and that's really not at issue. The question is, the robbery that's understood in the guidelines, does that include a Virginia robbery which can be committed without violence? So the only problem under White and Williams with Virginia robbery is that it can theoretically be committed under the sodomy threat theory. That's the only problem with Virginia robbery for purposes of the Force Clause. It's a material problem to whether it's a crime of violence, right? It's a material problem to whether it's a crime of violence under the Force Clause, but whether or not something is a categorical match to either generic robbery or the guidelines definition of robbery is a separate legal analysis that this Court, and to my awareness, no Court has undertaken. Does the guidelines define robbery? It does now, Your Honor, and that's my second point. How does it define robbery? It is defined as of the 2023 version of the guidelines. It's a bit of a lengthy definition, but I can read it for Your Honor if you want. I'm sorry to cut you off before fully answering Judge Niemeyer's question, but is the government's position that robbery by threat of sodomy is encompassed by the guidelines definition of murder? Our fundamental submission is that we don't know. No one has undertaken the task of trying to analyze it, either below or on appeal. We've got no case on it, but how would you articulate that it is? Your Honor, a court assessing the issue would have to look at either generic robbery or the guidelines definition of robbery, again, which no party has cited to or discussed, much less the district court. I guess my question to you, and I think Judge Quattlebaum's question is, do you have a position as to whether the guidelines definition covers Virginia robbery? We haven't taken a position on that. Well, shouldn't you have to in this case? No, Your Honor, because as we've said, there's an alternate ground for affirmance here, and I understand . . . But that wasn't discussed below, was it? No, Your Honor, but it's quite clear what the bar is here. When we're talking about whether or not an inmate has served ten years, we can all add up to ten, and we all agree. But if you're . . . if White doesn't control us, we should affirm the district court. District court may . . . and we wouldn't go to an alternative ground. I guess we could, but anyway, it seems like the natural first step is to look at what the district court did, and the district court said it couldn't tell . . . I don't remember the exact language, but it basically found a crime of violence, and so we need to . . . You're shaking your head like I'm . . . I apologize for shaking my head in the middle. If I'm wrong, shake away. What the district court held is that it was uncertain. It came to the conclusion that it was uncertain whether or not Virginia robbery was . . . met the enumerated robbery definition in the guidelines. Why did it deny compassionate release? Why did it deny compassionate release? It found that that residual uncertainty, paired with the other proffered reasons, which were COVID-19, which defendant abandons on appeal, and rehabilitation, the combination of those three factors, even considered together, did not in its discretion amount to an extraordinary and compelling circumstance. I understand the court's point. Maybe this is the more natural way to just assess it on the merits first, but the court has the discretion to tackle these issues in whatever order it feels appropriate, and here we've got a pretty clear math-based reason to affirm and to say that the court could not have granted relief, and therefore it should affirm whether or not . . . it could get into the issues if it wanted to about whether or not white controls and the status of Virginia robbery as a crime of violence, but frankly those are stickier issues that haven't really been fully briefed up given the amendment to the definition of robbery in the guidelines. We would just submit that the easier path is the way to go here. If the court does decide to affirm on the basis that defendant hasn't served ten years, which he has not, there's no real reason to go into white, that can be left for the district court in the first instance or for a future case that would be kind of trending towards potentially an advisory opinion on a non-dispositive issue. I'm just looking at the definition and the guideline. It said you're taking the property from another on a threatened fear of injury, and the question is I guess to threaten somebody with sodomy, would that be a threat of injury? I don't know whether the argument is reputational injury or whatever is possible under that. I do see that there might be some interpretive difficulty. I don't know. Exactly. That's our point, Your Honor, is that it is a tough question. Basically, that cashes out in two ways. One, it was reasonable for the district court to note that it was a threat of injury, and two, when there's an easier way to affirm, this court should likely take that path. Your Honor, we have other arguments about why a white claim wouldn't be properly considered an extraordinary and compelling reason, even if Virginia robbery were not to be found to be a categorical match to enumerated robbery. I'm happy to address that if the court's curious about that. We would also suggest my friend at the district court to essentially grant compassionate release instead of remanding the case. Never mind. Your Honor, the only thing I'd just say, we talk about the serving the ten years in the context of subsection B6. That's really the only possibly applicable subsection of 1B1.13 that could apply. My friend briefly mentioned the catch-all provision, but subsection C of the policy statement very clearly says that changes in the law cannot be considered anywhere else other than B6. If B6 doesn't apply, the catch-all provision is also not going to apply because the only thing he identifies now is rehabilitation, which is not alone insufficient, and a change in the law. For those reasons, Your Honor, we'd ask that you affirm the district court's denial of this motion for compassionate release. If there are no further questions, I'll take my seat. What's the status of his service of his prison term? Your Honor, as of today he has served approximately nine years. Under current circumstances, his good time credits don't merit his release yet. He has 188 months under current status, right? That's correct. He's served roughly 109 months. I haven't done it in months, and I would hesitate to do the mental math. This is just speculation. Thank you. If I could just give a more concrete answer. According to the BOP, his projected release date is in June of 2029 with an additional 365 days of First Step Act credits. It would be in June of 2028, so several years from now. Thank you. Do I get the remainder of the time? A few things, Your Honor. One, I wanted to just go quickly on the White issue and the 10-year rule issue separately. First of all, on White, I just wanted to point out that the generic definition of robbery was briefed in this instance, and the generic definition of robbery under the guidelines is not materially different from what this court used in U.S. v. Gaddis. The main fight over the generic definition of robbery, as this court is probably well aware of, and I believe Judge Niemeyer wrote, Your Honor, wrote Gaddis more than I am, is about the level of force that was necessary. There's a lot of argument about threat of force to property and things like that. There's never been a debate that some sort of threat of force to personal property is necessary. I think it's also worth noting that the Supreme Court of Virginia is the one who defined robbery differently here. We're not talking about fourth circuit precedent. We're talking about respect for state law definition of what their robbery crime is. And I believe that as our position is, the district court's statement of uncertainty on a legal question does not matter. Whether the court says you were wrong or right about a legal question, or I don't know the answer to a legal question, if the answer to a legal question is yes, and the court says no or I don't know, that is still a legal error that constitutes an abuse of discretion. And it's impossible to separate the district court's denial of the extraordinary and compelling reasons from its belief that whites still... I would think the burden would be on you under a motion for a compassionate release to show a change in the law. Yes, Your Honor. And so it's our position though... And you would have to carry the burden on that, right? Yes, Your Honor, but whether or not the law has changed is a legal question. And so the fact that the district... so this court can review that de novo. If the district court had said yes, the law has changed, but your factors don't meet, or whatever the other analysis, that's an abuse of discretion. Here, the court denied that there was even a change of law in the first place. And the fact that it said uncertainty and expressed uncertainty on a legal question, that does not matter. I think the confusion comes in that if it had said there was a change in law, but I am uncertain about whether you are granted relief because of that, that is an abuse of discretion. That is a discretionary standard. As a matter of fact, the district court said, I'm not sure Virginia... how they defined it. I mean, he was unsure they had done that. Yes, Your Honor, and so I think that's... and so that is an answer. And I wanted to quickly go to the 10-year rule thing on a few more things. I just wanted to... I don't want to repeat what I said before, but I think it's worth noting that my friend on the other side kept saying time served, time served, time served. It's of the term of imprisonment. That phrase cannot be written out of the policy statement. Well, you can only serve a term of imprisonment. We're not serving cocktails. Yes, but sentence and other things. In order to make the sentence clear, you have to serve 10 years of your term of imprisonment. But they use other phrases in other contexts, Your Honor. They say served the sentence or has served 10 years of their sentence or the term of imprisonment to which they were sentenced. I'm not sure that's a big deal. Well, Your Honor, that is... but the other thing I wanted to note on the good time credits is that, again, the district courts, and I don't have all the names off the top of my head, but they are in our brief. Many district courts here within the fourth circuit that this court has affirmed have said that when they're granting relief, something like defendant has served 140 months counting good time credits. They don't say the good time credits which they may lose in the future. That's a speculative nature. The same way we cannot count good time credits he hasn't earned yet, they cannot speculate that he might lose them because it's worth noting under this court's precedent, they cannot be removed willy-nilly. They are earned each year. So there's a lower bar for removing the ones that you haven't earned yet of that year. But once they are earned, it requires pretty serious infractions and procedural due process protections for them to be removed. So it's a practical matter, too, on the good time credits. Most of the issues that would involve Mr. Crawley potentially losing those good time credits would separately be things that would deny him compassionate release anyway. If he commits kind of serious infractions like that, Your Honors, I believe I've reserved more time before, but it looks like I am out of time. So I would like to ask that you reverse the district court. Thank you. Thank you. Mr. Zimmel, you were court appointed, were you? Yes, Your Honor. We really appreciate that. I want to recognize your service to the court. As you know, it's an essential function of our court to have somebody like you doing this and doing a good job. Thank you very much. Thank you very much, Your Honor. We'll come down and greet counsel and adjourn for the day. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Roger L. Gregory, A. Marvin Quattlebaum Jr.